Good afternoon, everyone. Can everyone hear? Yes. All right. With the clerk, please call the case. 3 240051 in Ray Estate of Patrick E. Peyton deceased Larissa A. Peyton, Lawrence Peyton and Alexis Peyton appellants versus Dorothy Springer happily. Mr. Carp, you're ready to proceed. Yeah. Please proceed. All right. Thank you. Uh, may please the court. Thank you for entertaining our arguments today. Um, this is kind of a weird appeal in that it only has one basic issue before the court, although I think it is a very important issue that needs to be handled by this court. Um, we're here day based upon the power of attorney statute and the definition of what successor and interest means. Uh, before we get into that too much, I do want to discuss the facts, uh, limited here. Um, the facts of this case, as alleged by my clients by the petitioners, is that the petitioners and Patrick Peton, the decedent, had a very close, familiar relationship. My Patrick Peton had two siblings, Dorothy Springer and Lawrence Peton. Uh, Dorothy Springer, his sister is the defendant in this case or the appellee. Uh, Lawrence Peton pre-deceased Patrick Peton, um, after complications with surgery, even after, well, both before and after Lawrence Peton's passing. Uh, Patrick Peton had a very close relationship with my clients, Alex, Larry, I'll call him instead of Lawrence, because there's a double name there, and Larissa, who is also Larissa Jr., basically named after her mother. Um, this included numerous letters back and forth between my clients and Patrick. Patrick was kind of an odd individual. He lived a very interesting life. He was nomadic. Um, he would move from town to town. He kind of liked seeing different places, uh, traveling. He was very frugal. He saved basically every penny he ever had. And at the time of his death, there was an excess of $5 million in his various Vanguard accounts. Uh, he was a pretty savvy investor. Uh, prior to Patrick's death, uh, there were numerous correspondence between my clients and Patrick about adding them to his accounts. And on his way to Illinois from out west to do that, he became, unfortunately, quite severely ill. He ended up in a hospital in Iowa. Um, thereafter, um, he, he was struggling with health for a short period, uh, to the point that the parties, I don't think, believed that he would actually survive. Um, fortunately, he did. But during that period, he made Dorothy his power attorney for property. Um, immediately after becoming power attorney for property, Dorothy started making actions that we allege are improper, uh, including moving money around, spending the money, um, all contained in our complaint. From that point on, there were numerous discussions about adding my clients as beneficiaries on the accounts. Uh, one of the accounts we believe is Per Sturpey's, uh, Lawrence, the father and the brother of Patrick, sorry, and the father of my clients, um, was on one of the accounts already. And then there was discussions about adding them on the beneficiary designations after Lawrence passed away. Uh, so you see, we believe it's Per Sturpey's. I didn't quite get that from the arguments that you had previously made. There were, there were two accounts. Oh, sorry. Go ahead. Where's that at in the record that, that you argue that it's, uh, Per Sturpey's? It's, um, there were actually two sets of accounts. There was what were, sorry, retirement accounts, and then there was just the normal investment accounts. Um, the retirement account isn't subject to this appeal. I just bring that up for reference. So it's not before your court, really. It's, it's just a background fact, if you will.  From there, uh, there were numerous discussions about adding my clients, the Petens, as beneficiaries on the accounts at issue, the non-retirement accounts, if you will. And the, um, at one point they submitted their information to Patrick, um, and then they did it a second time. Uh, at that point, Larry, who's one of the three children, or nieces and nephews, rather, um, met with Patrick and, and in his presence, Patrick called Dorothy and told her to add my clients as beneficiaries. Thereafter, uh, he, he immediately went and met with Dorothy on the same day, gave her the information based upon Patrick's direction. And Dorothy confirmed that she would add them as beneficiaries. From that point until 2022, when Patrick died, um, our clients didn't know that there was any change, that, that they weren't added as beneficiaries. They believed they were. It was only upon Patrick's death that they found out that Dorothy had never done what she said she would do. Um, that- Counsel, if Dorothy hadn't done anything with the power of attorney, in terms of changing the beneficiary designations, would your clients have, uh, received funds from the, from that, that, that are in dispute? You're saying at the time she became power of attorney, if she had, uh, if she had made no changes whatsoever. Right. Key funds. Um, no, not at that time. Um, that, that was Patrick's intent to add them, after Lawrence's passing. Um, so that was the purpose of the meeting and the numerous discussions. They wouldn't have even gotten it, they wouldn't have even inherited as, as, um, heirs of their father? Well, we argue on the retirement accounts, which is not before this court, that's, that's down to the trial level still. Um, this is just on the British fiduciary duty account. Uh, on the accounts to be persterpes. Um, that's, that's the argument that we've raised at the trial level. Okay, so none of the accounts that she used the power of attorney to modify were, um, were, would have resulted in them as heirs of their father receiving the funds. Is that correct? Lawrence at that time was not listed. So a lot of the changes to the beneficiary accounts were done very late in life. Um, for example, uh, prior to, I think, 2017, that some of the accounts didn't even have beneficiary designations. And the will that is at issue, not an issue, but the underlying will in this case is, I believe, from the late 1950s prior to my clients even being alive. Um, so there, there's a, my clients were younger, let's say they're, they're medical students or, um, in their 20s. So they're not, um, as old as Dorothy's children who are, I believe, in their 50s and 60s. That still doesn't answer my question. If you trace the, the, the money back, or if you trace the accounts back to Dorothy executing the power, having, using the power of attorney, would any of, would your clients have received any money from those accounts that, that Dorothy changed beneficiary designation on? No, not at the time. If she had done nothing, if she had made no changes, which is what we're alleging, by the way, is that she didn't add us like she was instructed to do. Um, at that point and prior, we were not listed as their father, their father wasn't, your client's father was not listed as beneficiary either. Is that correct? Not on those specific accounts, no. Okay, thank you. Yeah, no problem. Um, so based on the allegations, and again, what we're here, so leaving the facts aside, why are we here? Well, we're here on basically, uh, initially Judge Fullerton, uh, and DuPage, uh, denied, uh, the appellee's motion dismiss on this exact issue and said he, he did believe that we were successors in interest. Upon a motion to reconsider, he, he changed course and he said, well, you know, I, I'm not clear on this. I'm trying to, as best as I can, but there, there really isn't any case law in this and, and I don't think, I think both the parties will agree on that. There is nothing in Illinois that defines what successors and interest means. Um, at that point, um, he, he reversed himself on a motion to reconsider and granted, uh, the appellee's 619 motion dismissed based upon standing. And as this court is, I'm sure, well aware, on a 619 basis, the movement has to accept as true all well-pleaded facts. Um, so it's not in contest the underlying facts of this case and what we're saying at this stage. Um, so upon that motion, uh, the court granted that there was not standing as the court did not believe that successors and interest, uh, applied to my clients. Um, and the problem in Illinois right now is obviously there, there isn't a case that says what successors and interest means. We even went back to the legislative notes. Um, there's nothing, there's no discussion on the floor. There's nothing regarding this. The, the language was added to the act and as best as we can tell, we cited to Illinois cases that dealt with this issue, but remotely it didn't address it head on, but there are cases that proceeded on past the pleading stage. They went to some judgment or trial. Um, and then we found every case that was similar to this in the U S um, every case as cited in our motion, um, and our, sorry, our brief, all those cases side with us. They say that, there's a common sense approach here to what successors and interest means. Um, in fact, Missouri even has it in the statute. They say successors and interest most assuredly covers parties such as my clients. Uh, again, this is on a 619 basis. So we're not really arguing the facts. What we're saying is based on the facts, do we have standing? Um, I believe firmly that based upon the clear language of the statute and based upon what successors and interest from a common perspective has to mean is that we are entitled to bring this claim. Um, if not for Dorothy's actions or inaction, um, we would have been named as beneficiaries. And for that reason, we would be successors and interest with the ability to bring forth this claim on behalf of Patrick's, um, on behalf of Patrick. Uh, the cases are, I think, pretty clear on this. I mean, this is a case of first impression, I believe in Illinois. Um, it is an interesting issue. Uh, but when we look at the standard and when we look at the cases that we cite, I mean, California, Virginia, Connecticut, uh, Hampshire, Kansas, um, Missouri, almost every state that has dealt with this issue has cited firmly on our side. Um, in fact, the appellate can't point to a single case that supports her position. Um, when we look at the cases, um, you know, for example, Sarkeesian v. Sarkeesian is a, uh, district court case from the federal court in Kansas. It says that it is not strictly limited to the principle for enforcement of the statute or to bring a claim under the statute. And the common sense dictates that different, uh, parties can bring forth a claim, especially if they've been damaged through the fact that the agent didn't do what the principle instructed them to do. Um, again, we're not arguing about the facts of this case. We're, we're more arguing about whether we fall under the definition of successor and interest. And I think based upon what the cases say, based upon even the jurisdictions that are right around us, such as Missouri, um, all those jurisdictions come back to the same conclusion that the common sense approach is that successors and interest means those parties that were harmed ultimately because of what the agent did. Um, in this case, Prince, uh, Patrick, the decedent wanted something specific, instructed Dorothy to do so, and Dorothy refused to do it or did, or didn't do it, even though she said she would. At that point, that's where we become successors and interest because the damage actually flows to us, um, through Patrick. Patrick wanted something certain. Dorothy did not do that, intentionally so. And because of that, we were not named beneficiaries. Again, it's, I don't think it's an issue of whether or not we were named beneficiaries before or after. I think the, the issue, if I may respectfully, is that based upon the facts asserted, we should be successors and interest. Um, every case, like I said, every case falls on our side of the ledger. And then when you go into the Illinois cases, even that, again, they don't ever talk about what successor and interest means, but the cases are allowed to proceed, uh, either summary judgment or trial, meaning they got through discovery, um, the parties were entitled to, uh, advance their case, go through discovery, develop their case, and then ultimately the trier of fact made a decision. And that's, I think, the beauty of our system, right? That the trier of fact is ultimately the gatekeeper here. The trier of fact makes the decision after the case is developed and after the facts are put to it. Um, to make a decision now that we aren't successors and interest based upon the facts alleged forecloses us from ever being able to bring forth this claim, which frankly would serve as an injustice that would allow Dorothy to get away with her past bad actions. Um, and I don't think that's what this court or what the Illinois legislator or what the Illinois law would prefer. I think Illinois law prefers that cases are developed, that cases and parties be entitled to have their day in court and that those cases be facts and on the merits. And so for that reason, um, knowing that I'm about out of time here, I thank you. If you have any questions, I'm happy to answer them. Justice Peterson. I do not. Justice Albright. From an evidentiary standpoint, how would you get in the conversation between the decedent and your client and the, um, defendant? Great question. Um, from an evidentiary standpoint, the defendant is still alive. So any conversations between my client and the defendant, uh, there's no issue with that. That comes in as, as either a party mission or as, as a conversation between those two. As to the conversations with Patrick, right. He's unfortunately not deceased. So at play is, I think what you're alluding to is the dead man's act, right? Um, in this case, there are exceptions to the dead man's act. For example, whether this evidence that is going to be adduced to trial actually goes towards the actual issue of whether Dorothy Agnes or not. And then also as to whether we have other contemporaneous evidence as the communications, for example, we have written letters from Patrick, um, that aren't oral statements, for example. Um, to finally answer your question, I'm sorry, I'm out of time. I don't want to go past, but, uh, as the final point is, if the, uh, appellee opens the door, then dead man's act doesn't apply. And I would argue based upon the answer that the appellee already filed, that has already occurred because the appellee is in the answer raising issues as to oral communications between, uh, her and the deceit. Thus we are entitled to come forward with our own oral statements that counteract that. So that from an evidence standpoint, I think we can get around that, but at the same time, not to discount the question, I think it's a very good question, but that is an issue that will be adduced at trial or an evidentiary hearing. And again, we're at the pleading stage right now. So I think what's really important is what we've alleged and whether that those allegations place us as a successor in interest. Thank you. Thank you, Mr. Carr. I do have one question before we go to the appellee and that I think there is some confusion into the Vanguard accounts in question in this appeal. Let's just call them the accounts. In 2017, uh, Lawrence was added and it was Dorothy and Lawrence, uh, that were the beneficiaries, correct? No, there was a retirement account or retirement accounts that was on as a beneficiary at the time of his death. As to the individual, I'll call them investment accounts. Let's say not retirement accounts, investment accounts, uh, Lawrence and my clients, his children were never listed. Uh, in fact, for some period of time, Dorothy wasn't listed. Um, that was all changed kind of in the last five or six years, give or take, uh, life. You answered my question. Thank you. Jennifer, I don't want to mispronounce your name. Uh, so I'm using your first name. Can you, is it Friedland? Yes. Friedland. Thank you. Please proceed. Thank you. Good afternoon. Um, again, my name is Jennifer Friedland. I represent, um, the defendant and the appellee, uh, in this case, her name is Dorothy Springer. And today we're asking, um, that you affirm the trial court's 2619 dismissal of, uh, plaintiff's breach of fiduciary duty claim against Dorothy, um, for lack of standing. Um, I did want to make, just make clear on, um, the, um, evidentiary issue that Mr. Cart just addressed. He had mentioned something about an answer that my client had filed. Um, obviously she has not filed an answer, um, to the breach of fiduciary duty claim and instead had it dismissed. There is pending below, uh, in the trial court, a, uh, tortious interference with expectancy claim, and that was answered. So I just want to make sure that we're clear on that. Um, according to the Vanguard, um, full agent authorization that Patrick Piton signed, Dorothy Springer, of course, has a fiduciary obligation to her brother, Patrick. That fiduciary obligation does not extend, uh, to the plaintiffs in this case because they were never beneficiaries of, um, of any of his accounts ever named as beneficiaries. Um, plaintiffs are asking that you find them to be successors in interest to, um, Patrick Piton's Vanguard accounts pursuant to the Illinois, uh, Power of Attorney Act, such as they have standing the file here. And there is no legal precedent, um, for doing so. I know that, I think Mr. Cart said that every case falls on our side of the ledger, and that is simply not true. The cases cited by Mr. Cart on behalf of the plaintiffs are all cases where plaintiffs at one point or another had a legal, legally cognizable interest in either an account or a trust as a beneficiary or, um, a piece of property. That is not the case here, but there is a case on point. It was decided by this court, the third district, um, and that case was cited, um, by a defendant below and is cited in our brief and is called Hoopingarner v. Stencil 329 LF 3D 271. Um, I noticed in my brief I had spelled it as Hoopinger, but it's Hoopingarner. Um, and this case was decided before the, um, Illinois Power of Attorney Act was amended to add, um, a successor in interest, the term successor in interest, um, but it's the same issue, um, and, and, and what the court decided was one must be a beneficiary in order to have standing to file a breach of fiduciary duty claim on behalf of a principal pursuant to the Illinois Power of Attorney Act. So, in that case, um, a grandmother, uh, had an annuity, and, um, the annuity, the beneficiary of the annuity was, uh, her granddaughter, and at some point in time, grandmother decided she wanted to change the beneficiary to the annuity to her housekeeper, but the grandmother never mailed in the beneficiary designation form. Um, the court determined that she, the, uh, housekeeper was not a beneficiary because pursuant to the policy, it had to have been mailed in for it to be perfected. Um, and then as a result, this court found that because, uh, the plaintiff was never a beneficiary to the annuity account, the plaintiff did not have standing to file a breach of fiduciary duty claim against the, uh, principal of, uh, of, of grandmothers, and, um, this also meant that they couldn't file a constructive fraud, uh, claim. Plaintiff's briefs cite statutes and cases from all over the country, but doesn't cite the case that applies that was decided by this, this court. Had the Illinois legislature not agreed with your finding in Hoop and Garner, it would have carefully defined successor and interest when it amended the Illinois Power of Attorney Act in 2011, and it didn't do that. Under Illinois law, when a statute doesn't define its own terms, a reviewing court can, uh, read the plain and ordinary meaning of those terms and can also look it up in a dictionary. Um, and so we cited the Black's Law Dictionary for successor and interest, which is someone who follows another in ownership or control of property. A successor and interest retains the rights as the original owner with no change in substance. In this case, as individuals who were never beneficiaries of Patrick Peton's Vanguard accounts, plaintiffs don't retain the same rights as Mr. Peton regarding those accounts. Uh, plaintiff disagrees with the Black Law Dictionary, um, definition, said it was irrelevant to the case, but didn't provide any other definition from any other dictionary for us to look at. Uh, successors and interests are individuals who have, or at one point had, an interest in a piece of property or an asset. So that could be, uh, beneficiaries to a trust, that's beneficiaries to a payable on death account, such as the ones at issue here, that can be, yes. If the beneficiary would have to Lawrence Persterpe's, would they be successors and interest? If it was Persterpe's, this, this account was not, um, alleged to be a Persterpe's account. And frankly, the retirement accounts were not Persterpe's accounts either. Um, and you know, that's our position is they never were, um, for those Persterpe's retirement. My question was, if they were, you would agree? Yes. If it was a Persterpe's account, I do agree. Yes. And this is, this is a uniform act, correct? I mean, there's a bunch of states that have adopted it. And I believe Mr. Cart's argument is, let's look at these other states since our state has not opined on it, at least that much. Uh, yes, that's true. I don't agree with Mr. Cart's position that every other state, um, is decided in their favor, that that's not the case. And in fact, there's not a case law cited by Mr. Cart or, um, by in any state that I looked at that is the same issue here where there was no interest, um, that the plaintiffs had no interest in the property ever. Um, the case law that was cited by Mr. Cart and the case law that comes up when we're looking at this issue are all cases where they, um, were either beneficiaries to trust, and then that was taken away, um, by a principal who had a power or they were, um, legatees in a will that was changed by a principal who had power. Um, that, that's just not the case here. And let's not forget that, um, there was a time period after the plaintiff's father's death where Patrick Peton could have and was able to identify, and this is according to the plaintiff's own facts, that was able to, I named them as beneficiaries and he didn't do that. Um, their father died on April 1st, 2018, according to their allegations. And the power of attorney was signed by my client in June of 2019. Um, so had he wanted to make them beneficiaries, he couldn't. You know, plaintiffs also ask you to look at all the facts that they've alleged. And of course, you know, we have not answered or disputed at this point, um, because we're still on a 2019 motion, but plaintiffs want you to look at all those facts to, um, to determine that, that you should look at whether, um, Mr. Peton's plan was to distribute to them, um, or not. But really, um, to look at his plan, you can look at the will and the will, which is a part of the it's at appendix 39. And the will was admitted to probate. And the will says, um, for his estate to be distributed to his beloved parents, share and share alike, provided however, that if neither survived me, then to my sister, Dorothy A. Springer and my brother, V. Lawrence Peton, share and share alike, provided that if neither my sister or brother survives me, then to my nephew and nieces and equal shares. That's the same distribution pattern that happened with the Vanguard accounts because since their father pre-deceased Dorothy, Dorothy remained as the sole primary beneficiary of those Vanguard's accounts, um, upon his passing, which I believe is what Justice Albrecht had pointed out. Um, there's a reason why plaintiffs can't cite a case on point. There just isn't one. There is not a case that supports the notion that plaintiffs could be successors and interest based on an alleged oral promise. Um, plaintiffs seem to think that it's of no consequence that they were never named beneficiaries, that their cases, they want you to think that their case is the same as all the case law that they provided. But what they're actually doing is asking you to stretch the limits on what a successor and interest can be, to take it one step beyond every case we've seen, to say that a verbal promise can be a legal interest in a payable on death account. And, you know, I just can't imagine what litigation would look like if that were the case. If anybody who said they were promised a distribution of some type of some in an estate or a trust or a payable on death account can therefore file a claim for breach of fiduciary duty. You don't even have to be related to be able to file that claim if that were the law. Um, this is why Hoop and Garner, um, this court's decision required that the interest be perfected for a beneficiary and take action on behalf of the decedent. Um, so for one to have standing, she must have a legally cognizable interest because they're never individually named as beneficiaries. The plaintiffs don't have that here. And unless you have any additional questions for me, um, we request that you affirm the trial court's finding that the claim should be dismissed pursuant to 619. Thank you. Thank you, Ms. Friedland. Justice Peterson? Justice Albright? No questions. Um, no questions. Thank you, Ms. Friedland. Mr. Cart? Any response? Just briefly, um, there are three points that I believe Ms. Friedland brought up. One is asking that you, um, that you find today that we are successors of interest. Again, I'm not asking for an evidentiary finding on anything. What I am asking for is that based upon the facts alleged, which must be admitted as true on a 619 basis, we do allege that we should be successors of interest, that we should have been named beneficiaries, that, um, and we're very specific on what happened and when it happened and who was there and who was present. Um, again, this is a fact issue. It really is. It comes down to whether or not it was Patrick's intent. And Ms. Friedland, and I should say the appellee, uh, wants to argue about that fact, but that's not what we're here for. Again, all the facts have to be admitted as true on a 619 basis. Um, secondly, Do you agree with Ms. Friedland's proposition that this would open the door, um, for example, the case that she's citing is a housekeeper, someone that had close contact with, um, presumably an elderly individual and may have had, um, certain opportunity, uh, to take advantage of that. Um, no one's suggesting that the facts that you have alleged are not true. Uh, we would take those as being true, but do you agree with her proposition? It would open that, that this would so to speak? Um, no, no, I don't. Um, I don't believe I don't agree with that proposition. And I think frankly, anytime that argument is made, it's basically a straw man argument. It's, it's that, well, the floodgates will open and all of a sudden the courts will be inundated with cases that frankly have, it'll just overload the courts, right? Whenever that argument is made, the inverse is actually also true. That if you foreclose this, everyone that wants to commit fraud or wants to abuse or power under power of attorney will now do a carte blanche because they know that there's nothing that can ever be done against them. That's the issue. Um, and so no, I don't think it's going to open the floodgates. I think it's going to take a specific set of facts like we have here. I mean, again, we, it's not just oral. Uh, we also have letters and one of the letters is actually attached to our complaint where he says, when I get to Chicago, we'll sit for you. Um, so there, there is correspondence on that, um, to back up what they're saying that doesn't happen ultimately, because he gets sick on his way to Chicago, but it does happen later through additional attempts by Patrick to get Dorothy to make this change, which she didn't do. So again, I don't think it opens the floodgates. And I think that's frankly, uh, I don't want to use the word red herring, but I think it kind of is. Uh, I think it's a, an argument that on its own doesn't really support anything. Um, someone's able to allege facts that would suggest that there was going to be a change that made them a beneficiary. That's all they need to do no matter who they are. I think, I think the history of the parties does come into the relevancy. It definitely does. I mean, well, the trier effect will determine that we're talking about this stage. So to have standing, all you have to do is make the allegation, um, and stand by it. I believe so. I mean, again, that's what Illinois law requires. Assert sufficient allegations of fact to support your cause of action. Again, it's not whether those facts can ultimately be proved or not. It's whether the facts are alleged. And on a 619 basis, that's what we've done. Um, so, you know, whether we can prove that is an issue at trial or summary judgment, whatever it might be, right? But I don't think at this point you can say, well, it'll open the floodgates. You're basically foreclosing any party from any set of facts from ever being able to assert that their successor's an interest, if that's the way this goes. Um, finally, as to, um, the fact that he had, had he wanted to, he could. Again, it's all arguing an alternative set of facts. It's not what we alleged in our complaint, which is what the court has to consider right now. Um, and in addition to that, he actually did try, he tried multiple times. Uh, unfortunately he became sick and then unfortunately he relied upon Dorothy. Remember, this is the guy that was very nomadic. He didn't have cell phone. He, sorry, he had a cell phone, but he didn't have like a smartphone. He didn't have a computer. He did everything by snail mail and he did everything by the old fashioned way, right? Um, so when he occurred, um, and then when Dorothy had the opportunity to, and as she was directed to, she didn't do it. Um, so again, we ask that the, uh, trial court be overturned on this issue, that the appellate court finds that successors and interest does apply to parties such as my clients. And, uh, we've asked that this be, um, sent back to the trial court for that purpose. Thank you. Thank you, Mr. Carter. Justice Peterson. I have no questions. Thank you. Justice Albrecht. No questions. Counsel, thank you very much for your arguments and you will be escorted out of the virtual courtroom. Have a good day. Thank you for your time. Thank you.